**E-filed 3/31/2009**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IQBAL HUSAIN,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>AHMAD KHAN and DOES 1 through 10,<br><br>　　　　　　　Defendants. | Case Number C 06-7081 JF (HRL)<br><br>ORDER[1] DENYING MOTION FOR SUMMARY JUDGMENT<br><br>[re: docket nos. 70, 74, 77] |

Defendant and Counter-Claimant Amjad Khan ("Khan") moves for summary judgment as to his counterclaim for conversion against Plaintiff and Counter-Defendant Iqbal Husain ("Husain").[2] The Court has considered the moving and responding papers filed by the parties

---

[1] This disposition is not designated for publication in the official reports.

[2] Husain also filed a "motion in limine/motion for preclusion" to preclude the use of certain evidence at trial pursuant to Fed. R. Civ. P. 37(c)(1). The Court will deny the motion without prejudice to renewal at a later time because such a motion should be brought as a pretrial motion in limine in conjunction with the filing of the parties' joint final pretrial conference statement. *See* Civ. L.R. 16-10(b). Any other discovery disputes should be heard before Magistrate Judge Lloyd.

and the arguments made at the hearing on February 27, 2009. For the reasons set forth below, the motion will be denied.[3]

## I. BACKGROUND

Khan is the owner of a controlling interest in Bangla Phone, Ltd. ("Bangla Phone"), an entity organized under the laws of Bangladesh. Khan Decl. ¶ 2.[4] On or about June 22, 2004, Bangla Phone entered into a public switched telephone network license agreement (the "PSTN License") with the Bangladesh Telecommunication Regulatory Commission ("BTRC") to provide a PSTN network to certain regions of Bangladesh. *Id*. ¶ 7. Although there are existing telephone networks in Bangladesh, interruptions in service are common because of the poor condition of the physical infrastructure. *Id*. ¶ 5. Bangla Phone intended to create a fiber optic telephone network, utilizing as a key component what the parties refer to as "Bangla Boxes" at various locations to handle switching and routing of telephone traffic. *See id.* ¶¶ 4-5. The Bangla Box would enable Bangla Phone to provide service to large numbers of subscribers as well as provide redundancies designed to avoid the interruptions in service that otherwise plague telephone service in Bangladesh. *Id*. ¶ 6. After Bangla Phone entered into the PSTN License with the BTRC, it began construction of the network infrastructure. *See id.* ¶ 20.

Husain is an electrical engineer with experience in network architecture. *See* Husain Decl. ¶ 1. At some point in 2004, Husain conceived of a telecommunications product referred to as a "Broadband Loop Carrier" ("BLC"), a device designed to have the capacity to connect up to forty-eight telephones via a fiber-optic cable. *Id*. ¶¶ 1-2. The BLC device also would eliminate the need for copper wire, thus avoiding the costs associated with expensive copper cabling. *Id*. ¶2. To garner interest in this potential product, Husain prepared promotional materials for

---

[3] In his opposition papers, Husain requests that the Court grant summary judgment in his favor as to Khan's claim for conversion. Without commenting on the merits of such a motion, the Court will not consider this request, as Husain did not provide formal notice of a cross motion for summary judgment. *See* Civ. L.R. 7-2.

[4] Bangla Phone has assigned to Khan all interests, rights and claims relative to the penalty imposed by the BTRC against Bangla Phone, as well as all lost profit damages of Bangla Phone based on Husain's conduct as claimed in this case. Khan Decl. ¶ 3.

Case No. C 06-7081 JF (HRL)
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
(JFLC1)

distribution to potential investors. *See id.* ¶ 3. Certain presentation materials estimated the development cost for a BLC box to be approximately $1 million. *Id.* ¶ 3. At some point in the second half of 2004, Husain and Khan met and entered into an oral agreement pursuant to which Husain would develop a BLC box that would fit the role of the Bangla Box in the Bangla Phone telephone network. *See id.* ¶¶ 3-4.

The remaining relevant facts are largely in dispute. According to Khan, the parties orally agreed to enter into a "joint venture" to develop the Bangla Box, with Husain in charge of the design of the "board" for the Bangla Box. Khan Decl. ¶ 10. The board is the essential component or "brain" of the Bangla Box. *See id.* The parties agreed to form two companies, one in Bangladesh and the other in California, to develop and manufacture the Bangla Boxes. *Id.* ¶ 9. Khan alleges that the parties originally agreed that these two companies would be jointly owned, but that Husain formed the California entity, Commlink LLC ("Commlink"), without Khan's knowledge. *Id.* Khan also refused a later offer of a minority ownership position in Commlink. *Id.* In contrast to Khan's version of events, Husain characterizes Khan's role in the development of the Bangla Box as one analogous to that of an investor rather than a partner. *See* Husain Decl. ¶¶ 4, 6, 17. Husain claims that a partnership never was contemplated and that he always intended to hold the primary ownership interest in Commlink. *See id.* ¶ 7. According to Husain, the parties agreed to share the costs and profits equally with respect to the development of the Bangla Boxes. *Id.* ¶ 5. Khan (and Bangla Phone) then would purchase the Bangla Boxes from Commlink for use in the Bangla Phone network. *See id.*

Manufacture of a working prototype of the Bangla Box required development of both the board and the accompanying software from scratch. *See* Husain Decl. ¶ 6. According to the parties' oral agreement, the software development was to be performed by software engineers in Bangladesh, and the hardware was to be built in California by the Commlink entity. *Id.* Khan provided the workspace in Bangladesh for the software engineers, but Husain asserts that he rather than Khan hired the engineers and managed their work. *Id.* Khan contends that he was responsible for paying the Bangladeshi software engineers and that he also had management duties. Khan Decl. ¶ 11. Husain hired and managed the Commlink team in California charged

with the design and manufacture the prototype Bangla board.  Husain Decl. ¶ 7.

The parties' collaboration began to sour during 2005.  Khan Decl. ¶ 12.  Disputes arose with respect to the pace of product development as well as apportionment of costs.  *See* Husain Decl. ¶ 10.  In December 2005, the parties entered into a one-page written settlement (the "Settlement"), which in its entirety recited the following:

> The settlement in the matter of COMMLINK LLC a California limited liability Company and its owner Iqbal Husain and Amjad H. Khan is hereby settled with the following terms and conditions:
>
> 1. The company costs will split equally [sic] by the parties until January 31, 2006.
>
> 2. The intellectual property ownership rights to the product will stay with both the parties.  All Hardware and software design and design related materials will be given to each other and or his nominee immediately.
>
> 3. Both parties will submit a detailed cost list of their own within 30 days.  These costs will be added and split in half to find each others [sic] cost.  Which ever [sic] party is due, the other party will be responsible to pay such amount.
>
> 4. Each party has the right to claim the ownership and continue progress on the project.

Husain Decl. Ex. 3.  At the time of the Settlement, the Bangla Box and the Bangla board were still in the development stage, but two prototype boards had been built by Commlink.  *See id.* ¶ 10; Khan Decl. ¶ 14.

Khan argues that the language of the Settlement proves that the parties had a joint partnership before and after January 31, 2006.  *See* Mot. Summ. J. 10-11.  In response, Husain contends that the Settlement merely addressed the parties' outstanding disputes regarding costs incurred for the development of the Bangla Box as of December 2005 and indicated a formal split in the parties' respective interests after January 31, 2006.  *See* Husain Decl. ¶¶ 13-14.  Husain also asserts that as of early February 2006 he had invested approximately $158,605.21 in excess of Khan's share of the costs towards Commlink and its development of the Bangla board. *See id.* ¶ 9.

Around the time the parties entered into the Settlement (the exact date is unclear, *see* Khan Decl. ¶ 14), Husain sent one of the prototype boards to Khan and the software engineer

4

team in Bangladesh for testing. *Id.* The board did not perform satisfactorily and Khan shipped it back to Husain for repairs. *Id.* ¶ 15. In late February 2006, after the parties had entered into the Settlement, Husain billed Khan $1,600 for repairs to the board. Husain Decl. Ex. 12. Husain also informed Khan that he would not return the repaired board until Khan paid $1,600 as well as the $158,605.21 that Khan still allegedly owed for his share of the costs. *Id.* Khan refused to pay these costs, and Husain subsequently filed suit in the Santa Clara Superior Court on July 11, 2006, alleging breach of contract. Khan removed the action to this Court and filed an answer and multiple counterclaims, including a counterclaim for conversion of the board that Husain had refused to return.

## II.  LEGAL STANDARD

Summary judgment should be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, or other evidence that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. Once the moving party meets this burden, the nonmoving party may not rest upon mere allegations or denials, and instead must present evidence sufficient to demonstrate that there is a genuine issue for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49.

## III.  DISCUSSION

"Conversion is the wrongful exercise of dominion over the property of another."

5

1  *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 543 (1996).[5]  To prevail on a claim of
2  conversion, a plaintiff must show (1) a right of possession or ownership at the time of the
3  conversion; (2) conversion of the property by a wrongful act or disposition of the property rights;
4  and (3) damages. *Id*. at 543-44.  An act of conversion may occur through an actual physical
5  misappropriation or by an assumption of control or ownership. *Id.* at 544.  In California,
6  conversion is considered a strict liability tort and thus "questions of good faith, lack of
7  knowledge and motive are ordinarily immaterial." *Id.*

8  Khan asserts that he paid his share for two prototype boards and thus has a right to at least
9  one of the boards built by Commlink—specifically the board that is still in Husain's possession.
10  *See* Khan Decl. ¶¶ 10, 16-17.  While the board itself is worth only a few thousand dollars, *see*
11  Husain Decl. ¶ 23, Khan seeks damages of almost $300,000 on the basis that Husain's refusal to
12  return the board prevented the Bangla Phone network from becoming operational, leading to a
13  breach of the PSTN license and the imposition of fines by the BTRC.  *See* Khan Decl. ¶ 21.
14  Husain disputes that Khan has paid any of the repair cost or other outstanding fees owed to
15  Commlink and asserts that Khan never had an ownership right either of the prototype boards.
16  *See* Husain Decl. ¶¶ 16, 19, 23.  Husain also disputes that the alleged conversion was the
17  proximate cause of the fines imposed by the BTRC.  *See id.* ¶ 25.  Instead, he asserts that Bangla
18  Phone was in breach of other provisions of the PSTN license unrelated to the absence of a
19  working Bangla box.  *Id.*  Husain also contends that there was at least one substitute board
20  (manufactured by another company) available to Khan, and that the parties understood that the
21  Commlink's Bangla board was a mere prototype that might never evolve into a functional
22  product.  *See id.* ¶¶ 33, 36-38.

23  A.  Ownership

24  A plaintiff must show that it had title to or a right to possess the property in question at
25  the time of the alleged conversion.  *CHoPP Computer Corp. v. U.S.*, 5 F.3d 1344, 1347 (9th Cir.

---

[5] Because this case was removed to federal court on the basis of diversity jurisdiction, the Court must apply California substantive law to matters not governed by the United States Constitution or federal statutes.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

1993). Actual legal title or absolute ownership is not necessary. *Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 454 (1997). Husain argues that any boards produced by Commlink belonged to Commlink until they were purchased formally by Bangla Phone. In addition, Husain asserts that the parties did not have a joint venture, but rather that Khan was an investor in Commlink. On at least one occasion, Husain suggested to Khan that Commlink be treated as a "vendor" in order to ease concerns about reimbursement for salaries and expenses. *See* Husain Decl. Ex. 16. In another exchange, Khan threatened that Bangla Phone will build its "own Board" if Commlink refused to return the repaired board. *See* Husain Decl. Ex. 21.

The Court agrees that there is a genuine dispute regarding the parties' respective rights to the board. Prior to the alleged conversion, the relationship between the parties—joint venture or otherwise—was governed by an oral contract. The Settlement did not resolve all of the ambiguities regarding the true nature of the parties' arrangement, as it is both brief and vague, and if anything it supports Husain's argument that it represented a "splitting" of interests as much as it does Khan's position that the parties had a "joint venture" going forward. In addition, the settlement refers to the sharing of intellectual property but does not refer to any physical hardware built by Commlink. Accordingly, Khan has not met his burden with respect to ownership of the board. *See CHoPP*, 5 F.3d at 1347.

At oral argument, Khan asserted that Husain's refusal to return the board was an act that clearly demonstrated that Khan owned the board. The Court is not convinced by this argument. Husain's refusal to return the board hardly makes Khan's ownership interest self-evident. An equally plausible explanation would be that Husain was lending the board to Khan, and that Husain was seeking reimbursement to correct problems with the board caused by Khan's testing. In light of the substantial amount of conflicting evidence presented by the parties, the Court concludes that summary judgment is not appropriate.[6]

---

[6] Even assuming that Khan had an ownership interest, Husain may have a possessory right to the board until Khan pays for repairs or other costs related to the board. *See Farmers Ins.*, 53 Cal. App. 4th at 453 ("An equitable lien is a right to subject property not in the possession of the lienor to the payment of a debt as a charge against that property."). *See also*

B.  Causation

"As a general rule, the value of the converted property is the appropriate measure of damages, and resort to the alternative occurs only where a determination of damages on the basis of value would be manifestly unjust." *Lueter v. State of Cal.*, 94 Cal. App. 4th 1285, 1302 (2002).  Alternatively, damages in excess of the value of the property may be recovered if they were proximately caused by the defendant's act of conversion. *See id.* at 1302-03. *See also Lint v. Chisolm*, 121 Cal. App. 3d 615, 624-25 (1981) ("where proof establishes an injury beyond that which would be adequately compensated by the value of the property and interest, the court may award such amounts as will indemnify for all proximate reasonable loss caused by the wrongful act."). What constitutes "proximate reasonable loss" is a question of fact. *Myers v. Stephens*, 233 Cal. App. 2d 104, 120 (1965).

According to Khan, the timing of Husain's alleged conversion occurred at a critical time. *See* Khan Decl. ¶¶ 19-22.  By September 27, 2006, Bangla Phone had built a near-complete fiber optic network in Bangladesh, at a cost of approximately $20 million. *Id*. ¶ 20.  According to Khan, all that was missing was the Bangla Box, which had not been installed because Husain still was in possession of the Bangla board. *See id*. Thus, Khan contends that Husain is liable not only for the cost of the board but also for all of the fines imposed upon Bangla Phone.

However, Husain has presented evidence that the penalty imposed by the BRTC may have been due at least in part to other deficiencies in the Bangla phone network at that time.  For example, Bangla Phone may have exceeded the geographic scope of its license.  Husain Decl. ¶¶ 25-27.  Husain further contends that the prototype board probably would not have been ready in time for the deadlines that Bangla Phone was obligated to meet pursuant to the PSTN License. *See id*.  The evidence presented by Husain creates a genuine issue of material fact as to whether

---

*Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 222 (2003) ("Not every failure to deliver property to the rightful owner constitutes a conversion.").  Husain has presented evidence that he is owed money for the design of the board, and while Khan contests the veracity of such evidence, credibility determinations are a matter for the jury. *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

1  Husain's actions were a proximate cause of the fees incurred by Bangla Phone. *See Lueter*, 94
2  Cal. App. 4th at 1302 ("the jury must determine whether it was reasonably foreseeable that
3  special injury or damage would result from the conversion.").

### IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that Khan's motion for summary judgment is DENIED.[7]

DATED:  March 31, 2009

_____
JEREMY FOGEL
United States District Judge

---

[7] Khan's request for judicial notice of two websites—one an online currency converter and another a BTRC website that purportedly shows the number of subscribers Bangla Phone had as on December 2007—will be granted as to the currency converter but denied as to the BTRC website because there is no evidence that the BTRC website contains accurate information except for Khan's conclusory statement that the data retrieved from this source is "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." In addition, Husain disputes the number of subscribers Bangla Phone actually had.  This determination is without prejudice to Khan presenting such evidence at a later stage of the proceedings with additional documentary support.

9

1  Notice has been electronically mailed to:

2  Daniel M. Shafer    dan.shafer@ejs-law.com

3  David Stanley Pearson    attorney@mac.com

4  Eric J Sidebotham    eric.sidebotham@ejs-law.com, dan.shafer@ejs-law.com, ryan.smith@ejs-law.com

5

6  Richard Proctor Doyle , Jr.    rdoyle@jd-law.com, rbeverly@jd-law.com

7  Larry Israel
   Larry Israel & Associates
   4454 Deer Ridge Rd
8  Blackhawk, CA 94506-6017

10

Case No. C 06-7081 JF (HRL)
ORDER DENYING MOTION FOR SUMMARY JUDGMENT
(JFLC1)