**E-Filed 7/29/2010**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| IQBAL HUSAIN,<br><br>                Plaintiff,<br><br>   v.<br><br>AMJAD KHAN, et al.,<br><br>                Defendants.<br><br>And Related Counterclaims | Case Number C 06-07081 JF (HRL)<br><br>MEMORANDUM OF INTENDED DECISION |

The above-entitled action was tried to the Court on March 12 and 26, 2010. The Court heard the testimony of the parties and received documentary evidence. Having considered the parties' oral testimony and documentary evidence, the applicable law and the arguments of counsel contained in the post-trial briefing, the Court now issues this memorandum of intended decision. The purpose of the memorandum is to set forth the Court's view of the law and the evidence. Counsel for Plaintiff will be directed to prepare findings of fact and conclusions of law in conformity with this memorandum.

## I. BACKGROUND

This case arises out of a failed joint venture and a subsequent settlement agreement

between the parties. Essentially, Plaintiff was to develop a telecommunications switching device that was to be used by Defendant in a telephone network in Bangladesh. For reasons that are disputed by the parties but largely irrelevant to the disposition of the instant case, the project did not come to fruition. On January 1, 2006, the parties agreed to part ways. They agreed in writing as follows:

1. The company costs will split [sic] equally by the parties until January 31, 2006.
2. The intellectual property ownership will stay with both the parties. All Hardware [sic] and software designs and design related materials will be given to each other and or his nominee immediately.
3. Both parties will submit a detailed cost list of their own within 30 days. These costs will be added and split in half to find each other's cost. Whichever party is due, the other party will be responsible to pay such amount.
4. Each party has the right to claim the ownership and continue progress on the project.

(Exhibit 1).

On January 30, 2006, Plaintiff provided Defendant with an itemization of Plaintiff's out-of-pocket expenses in the amount of $161,710.31. Plaintiff later claimed an entitlement to salary in the amount of $175,000. On or about February 18, 2006, Defendant's accountant sent Plaintiff an itemization of Defendant's costs in the approximate amount of $117,000. The parties subsequently exchanged emails and other correspondence disputing each other's cost figures and were unable to reach agreement. Plaintiff alleges that Defendant has breached the settlement agreement by failing to pay him half the difference in their respective expenses.

During the same time period, Defendant sent Plaintiff a prototype circuit board–developed during the joint venture–that Plaintiff agreed to repair. Although the cost of the repair itself was relatively modest, Plaintiff refused to return the board to Defendant until the dispute over costs was resolved (Exhibit 49). In his counterclaims, Defendant alleges that Plaintiff's refusal to return the board violated the settlement agreement, constituted conversion and interference with economic advantage, and resulted in significant consequential damages.

## II. DISCUSSION

**A. The Contract**

Several provisions of the parties' settlement agreement are ambiguous and require

judicial construction.  Paragraph 1 provides that "the company costs will split [sic] equally by the parties until January 31, 2006."  The parties dispute whether "the company costs" include Plaintiff's claimed salary expense of $175,000.  Based on the documents in the record and its assessment of the parties' testimony at trial, the Court finds by a preponderance of the evidence that "company costs" do not include a salary for either party.  There is no evidence that the joint venture ever had paid a salary to either party prior to the date of the settlement agreement, nor is there anything in the record suggesting that the parties had any specific salary figure in mind when they agreed to split their costs.  Rather, it appears that as he grew increasingly frustrated with Defendant's perceived failure to perform under the settlement agreement, Plaintiff came to believe that he was entitled to compensation for his efforts on behalf of the joint venture.  Plaintiff's subjective belief is insufficient either to support his proposed construction of the contract or a claim for quantum meruit.

      Paragraph 2 of the settlement agreement also is ambiguous.  Defendant argues that the word, "Hardware" in the second sentence is not modified by the phrase, "designs and design related materials" and that accordingly the agreement gave him a contractual right to possession of the circuit board that subsequently was retained by Plaintiff.  Plaintiff contends that the paragraph refers exclusively to "designs and design related materials, " including those relating to hardware.  Based on the documents in the record and its assessment of the parties' testimony at trial, the Court finds by a preponderance of the evidence that Paragraph 2 refers exclusively to "designs and design related materials."  The paragraph refers generally to intellectual rather than tangible property.  This finding is consistent with the Court's observation in its order dated March 31, 2009, denying Defendant's motion for summary judgment, that "the settlement refers to the sharing of intellectual property but does not refer to any physical hardware built by [the joint venture]." *Id*., at p. 7.  It also is significant that Defendant did not send the board to Plaintiff for repair until February 2006:  there is no evidence that Defendant claimed or believed that he was entitled to ownership or possession of any hardware as of the date of the settlement agreement.

      Finally, Paragraph 3 of the settlement agreement contains an ambiguity as to when the

parties were required to provide each other with their respective itemizations of costs. Plaintiff claims that the "30 days" specified in the agreement ran from the date of the agreement, while Defendant contends that this period began to run only after January 31, 2006, the date through which the parties agreed to split their expenses. While Defendant's interpretation is not unreasonable in the abstract, the Court finds by a preponderance of the evidence that the actual intention of the parties was that the itemizations were to be provided within thirty days after the agreement was signed. The evidence establishes that Plaintiff clearly proceeded on this assumption, sending Defendant not only his claimed costs but also the various design documents referenced in Paragraph 2 before the end of January 2006. Moreover, although Plaintiff asked expressly for Defendant's itemization of costs in an email dated January 30, 2006, Exhibit 58, Defendant never asserted, either at that time or subsequently, that the itemization was not due until thirty days after January 31, or that the itemization Defendant ultimately provided on or about February 18 was timely.

### B. Plaintiff's Claim

Plaintiff's claimed costs, exclusive of his claim for a salary, total $161,710.31. Plaintiff concedes that Defendant is entitled to an offset $51,650.00, leaving Plaintiff with a maximum net claim for half of the difference, or $55,030.16. Defendant both contests the legitimacy of Plaintiff's individual costs and claims substantial additional costs of his own. Plaintiff objects to and moves to strike all of Defendant's testimony with respect to this issue based on Defendant's failure to provide, either in discovery or at trial, any admissible evidence in support of his claims.

While it doubts that Plaintiff's itemization of costs would pass muster under Generally Accepted Accounting Principles, the Court nonetheless finds by a preponderance of the evidence that the costs are within the bounds of reason and are sufficiently documented. To the extent that there was a failure of proof with respect to any specific item, the Court concludes that Plaintiff is entitled to the total amount claimed (exclusive of his claim for a salary) in quantum meruit. In contrast, even assuming that Defendant's oral testimony concerning his costs is admissible in the absence of any contemporaneous records or other documentation, see F.R.E. 1002, and even considering the written itemization produced by Defendant at trial (Exhibit 26), which Plaintiff

timely moved to exclude in light of Defendant's repeated failure to provide such an itemization in discovery, the Court finds that Defendant has failed to provide any *credible* evidence of expenses for which he is entitled to credit under the settlement agreement. Accordingly, the Court will award contract damages to Plaintiff in the sum of $55,030.16.

### C. Defendant's Counterclaims

Defendant asserts counterclaims for breach of contract, conversion, and interference with economic advantage. With respect to the first counterclaim, the Court finds that Defendant himself breached the settlement agreement by failing to provide a timely itemization of costs and failing to pay Plaintiff the amount to which Plaintiff was entitled. Consistent with the discussion in part A, above, the Court also finds and concludes that Plaintiff had no contractual obligation to return the circuit board to Defendant. Because Defendant did not perform his own obligations, and because Plaintiff did not breach any material provision of the contract, Defendant is not entitled to relief.

To prevail on his counterclaim for conversion, Defendant had to show that he had an ownership interest in the circuit board. It is apparent from the record that when Defendant sent the board to Plaintiff for repair he expected that it would be returned, and that Plaintiff's refusal to return it was a form of self-help prompted by Defendant's perceived failure to perform under the settlement agreement. However, these circumstances are immaterial to the factual and legal question of ownership of the board. Defendant himself characterized the board as an asset owned either by Plaintiff (Exhibit 49, p. 26) or by the joint venture (Exhibit 37). Because it finds that Defendant failed to present sufficient evidence that he (as opposed to Plaintiff or the joint venture) actually owned the board, the Court concludes that Defendant cannot prevail on his conversion claim.

Finally, to the extent that Defendant's counterclaim for interference with economic advantage is based upon Plaintiff's failure to return the circuit board, it fails for all of the reasons discussed previously: without a legal entitlement to possession of the board, Defendant cannot claim that he was damaged by Plaintiff's failure to return it. Moreover, as early as February 23, even before Plaintiff told Defendant that the board would not be returned as long as the dispute

over costs was pending, Defendant stated that he did not need the board and would proceed without it (Exhibit 49, p. 25).  To the extent that this counterclaim is based on Plaintiff's interactions and alleged non-cooperation with Defendant's engineers later in 2006, the Court finds that Defendant failed to prove by a preponderance of the evidence either that Plaintiff acted with the intent to disrupt an economic relationship between Defendant and a third party or that Plaintiff's actions were the proximate cause of any cognizable injury to Defendant.

### III.  DISPOSITION

Plaintiff is entitled to judgment in the amount of $55, 030.16 on his claim for breach of contract.  Plaintiff also is entitled to judgment in his favor on each of Defendant's counterclaims.  Counsel for Plaintiff is requested to prepare findings of fact and conclusions of law consistent with this memorandum, together with a proposed judgment.

DATED: July 29, 2010

_____
JEREMY FOGEL
United States District Judge

Case No. C 06-07081 JF (HRL)
MEMORANDUM OF INTENDED DECISION